IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| DAVID W. GARDNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:07-CV-00900-DGK |
| | ) | |
| BD. OF POLICE COMMISSIONERS | ) | |
| FOR KANSAS CITY, MISSOURI, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING QUALIFIED IMMUNITY

This case arises out of the shooting of Plaintiff David Gardner ("Gardner") by Defendant Joel Ritchie ("Officer Ritchie" or "Ritchie"), a Kansas City, Missouri Police Department officer. On the day of the shooting, Ritchie, a diabetic, allegedly experienced a hypoglycemic episode while on duty and shot Gardner. Gardner is suing Ritchie for his injuries under various state-law tort theories and under 42 U.S.C. § 1983, alleging that Ritchie violated his Fourth Amendment right to be free from unreasonable seizure.

This Court previously denied Ritchie's motion for summary judgment with respect to the § 1983 claim, holding the shooting was a seizure for Fourth Amendment purposes and that Ritchie was not entitled to qualified immunity. Ritchie appealed, and the Eighth Circuit Court of Appeals vacated the qualified immunity determination, holding the Court erred in holding there had been a seizure without considering Ritchie's subjective intent. *Gardner v. Bd. of Police Comm'rs*, 641 F.3d 947, 953 (8th Cir. 2011). The Eighth Circuit instructed that on remand, "The district court should determine whether the evidence, viewed in the light most favorable to Gardner, would support a finding by a reasonable jury that Ritchie subjectively intended to effect

a seizure of Gardner by firing his weapon. If not, then Ritchie is entitled to qualified immunity."
*Id.*

Viewing the evidence in the light most favorable to Gardner, a reasonable jury could find that Ritchie subjectively intended to seize Gardner by firing his weapon. Consequently, Ritchie is not entitled to qualified immunity on the sole remaining § 1983 claim. Also, on its own motion, the Court refers this case to a magistrate for a settlement conference.

## Factual Background

Viewed in the light most favorable to Gardner, for purposes of resolving the pending issue the Court finds the facts to be as follows.[1]

Defendant Ritchie is a type 1, insulin-dependent diabetic.[2] In the eight years preceding the shooting, Ritchie had approximately ten hypoglycemic episodes. In the 18 months prior to the shooting, he had at least three hypoglycemic episodes, two of which occurred while he was on duty. During these episodes, Ritchie became confused and semi-combative, and he had to be disarmed by his fellow officers for his own safety and the safety of those around him.

In the days immediately preceding the shooting in this case, Ritchie had trouble maintaining steady glucose levels. The levels were within the range of hypoglycemia which might result in hypoglycemic symptoms of confusion, aggressiveness, and belligerence.

On the day of the shooting, September 24, 2007, Ritchie had difficulty controlling his blood sugar level, in part because he had not eaten. While working at a crime scene he began to feel somewhat confused and incredibly hungry, an indication that a hypoglycemic reaction may be coming on.

---

[1] The Court's previous summary judgment order set forth the evidence in this case at length. Much of this evidence, however, is not relevant to whether a reasonable jury could find Ritchie subjectively intended to shoot Gardner, and so the Court has omitted discussion of these facts.
[2] Type 1 diabetes is also known as juvenile diabetes. PDR Medical Dictionary 473 (1st ed. 1995).

2

Ritchie left the crime scene and went to Quik Trip with a fellow officer. At Quik Trip he ate a donut and drank some soda. He then left the store, drew his service weapon, and fired until it was empty. One shot hit Gardner as he was sitting inside his tractor-trailer; several others hit the tractor-trailer. Ritchie then walked away. A police offer subsequently found Ritchie walking down the street about a quarter mile away, appearing disoriented.

Ritchie's doctor testified that confusion, aggressiveness, and belligerence are possible hypoglycemic reactions, and that it is not rare for a diabetic to have a hypoglycemic episode. He also testified that each diabetic is unique; a diabetic's awareness of the surrounding circumstances during a hypoglycemic reaction differs depending on his or her blood sugar levels and reaction.

Ritchie claims that at the time of the shooting he was experiencing a hypoglycemic reaction. He also claims that when this is happening he cannot distinguish between reality and fiction, or appreciate the consequences of his acts. Ritchie claims he remembers being at Quick Trip and shooting his weapon, but does not remember anything else, including seeing Gardner, drawing his weapon, or aiming his weapon at Gardner. He also stated he did not feel aggressive, angry, violent, or combative at any time that day, and only began to realize what happened when he was approached by a police officer after the shooting.

## Standard

Gardner claims that Officer Ritchie violated § 1983 by violating his right to be free from unreasonable seizure. "To establish a violation of the Fourth Amendment in a section 1983 action, the claimant must demonstrate that a seizure occurred and the seizure was unreasonable." *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003). Not every act of a police officer that somehow restrains liberty constitutes a seizure. *Moore v. Indehar*, 514 F.3d 756, 765 (8th

Cir. 2008) (Beam, J., dissenting). "A Fourth Amendment seizure occurs when an officer, 'by means of physical force or show of authority, terminates or restrains [an individual's] freedom of movement, *through means intentionally applied.*'" *Gardner*, 641 F.3d at 951 (emphasis added) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)). A seizure must be willful, and an unknowing act cannot be a seizure. *Gardner*, 641 F.3d at 952. Thus, a court must make "an inquiry into the subjective intent of the officers at a higher level of generality—that is, an inquiry to ensure that the officers intended to achieve the result of a seizure through a particular instrumentality." *Id*.

Officer Ritchie argues he is entitled to qualified immunity. "Qualified immunity protects government officials from liability under § 1983 when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It provides protection "to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1996). An officer is entitled to qualified immunity unless (1) the facts, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right; and (2) the constitutional right was clearly established at the time of the deprivation so that a reasonable officer would understand his conduct was unlawful. *Nance*, 586 F.3d at 609. Although qualified immunity is an affirmative defense, the plaintiff must allege and present evidence from which a

reasonable jury could find that the officer violated the plaintiff's constitutional rights. *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997).

## Discussion

At the time of this shooting, the second prong of the qualified immunity test was satisfied; it was clearly established that a police officer's use of deadly force against someone is a seizure that is subject to the Fourth Amendment's reasonableness requirement, and that an officer's use of deadly force is unreasonable unless he has probable cause to believe that the suspect poses a threat of serious physical harm to the officer or others. *Nance*, 586 F.3d at 610.

At issue is whether Officer Ritchie's behavior satisfies the first prong. Ritchie contends he is entitled to qualified immunity because he did not violate Gardner's Fourth Amendment rights in that he did not subjectively intend for his actions to effect a seizure of Gardner. Ritchie argues he was suffering from a hypoglycemic reaction at the time of the shooting and thus could not have formulated the requisite intent to seize Gardner.

The Court holds that the evidence, viewed in the light most favorable to Gardner, would support a finding by a reasonable jury that Ritchie subjectively intended to effect a seizure of Gardner by firing his weapon. It is undisputed that after Ritchie left the store, he drew his gun from its holster, began firing, kept firing until the magazine was empty, and then walked away. It is also indisputable that while he was shooting, the gun was aimed at Gardner: Gardner was shot once, and the truck he was sitting in was shot multiple times. This is prima facie evidence from which a reasonable jury could infer that Ritchie meant to seize Gardner by shooting him.

Although Gardner has not established what, if any, reason Ritchie had for shooting him, he is not required to prove why Ritchie shot him, only that Ritchie shot him intentionally. A defendant can commit an intentional act without the plaintiff knowing why he did it.

5

The fact that Ritchie denies having any memory of shooting Gardner, or any intent to shoot Gardner does not make his denial true. As in *Moore v. Indehar*, this is not a case where the plaintiff's only chance of defeating qualified immunity rests in the possibility that the jury might disbelieve the officer's testimony. 514 F.3d 756, 761 (8th Cir. 2008). A jury is not required to believe Ritchie's self-serving testimony because it is contradicted by a crucial piece of physical evidence, namely the fact that Ritchie was pointing the gun either towards Gardner or straight at him several times when he fired. *Id.* at 761-62 (withholding qualified immunity where officer fired handgun pointed at plaintiff and the plaintiff was struck once by a bullet). Indeed, the inference that Officer Ritchie intentionally shot Gardner is stronger in this case than it was in *Indehar*, because in *Indehar* the plaintiff was running alongside another fleeing suspect, against whom the police could use deadly force, when he was shot, a fact which bolstered the officer's testimony that he never meant to shoot the plaintiff. *Id.* Consequently, a genuine dispute of fact remains as to Officer Ritchie's subjective intent in shooting Gardner. While a jury may ultimately find Officer Ritchie's explanation credible, evaluating credibility is the province of the jury, not this Court.

Additionally, viewed in the light most favorable to Gardner, the medical evidence which purportedly corroborates Ritchie's story is inconclusive, or even weighs against him. Ritchie's doctor testified that confusion, aggressiveness, and belligerence are *possible* hypoglycemic reactions, and that whether a diabetic is aware of the surrounding circumstances when he is having a hypoglycemic reaction is probably different for every diabetic, depending on how low that individual's blood sugar is and how much of a reaction he has. Indeed, there is no objective medical evidence here that Gardner was actually hypoglycemic at the time of the shooting.

At the same time, there is some evidence from which a reasonable jury could conclude that Ritchie was not hypoglycemic at the time of the shooting. This alleged hypoglycemic episode differs from the two verified episodes that occurred while Ritchie was on duty. In both of those cases, his fellow officers noted he was ill and then he subsequently fell unconscious. Here, however, Ritchie never displayed any obvious signs of illness or passed out: He navigated the convenience store without difficulty, interacted with other police officers, ate, drank, repeatedly fired his weapon, and then walked a quarter-mile, all without passing out.

Accordingly, the Court holds a reasonable jury could find Ritchie subjectively intended to effect a seizure of Gardner by firing his weapon, and thus Ritchie is not entitled to qualified immunity.

Although the Court is reluctant to push litigants toward settlement, this case strikes the Court as ripe for settlement. Accordingly, on its own motion, the Court refers this case to a magistrate for a settlement conference.

## Conclusion

For the reasons outlined above, the Court denies Defendant summary judgment and qualified immunity on Count I. The Court also refers this case to a magistrate for a settlement conference.

**IT IS SO ORDERED.**

Date:  January 20, 2012                     /s/ Greg Kays
                                            GREG KAYS, JUDGE
                                            UNITED STATES DISTRICT COURT